IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **HEALIX, INC. AND HEALIX** | § | |
| **INFUSION THERAPY, INC.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **JOHNSON & JOHNSON AND** | § | **JURY DEMANDED** |
| **DEPUY MITEK,** | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**NOW COMES** Healix, Inc. and Healix Infusion Therapy, Inc. (collectively "Healix") and file this, their Original Complaint against Johnson & Johnson and DePuy Mitek (collectively "Defendants") and would show the Court as follows:

## PARTIES

1.     Plaintiffs Healix, Inc. and Healix Infusion Therapy, Inc. are corporations organized under the laws of the State of Texas, with their corporate offices located at 14140 Southwest Freeway, Fourth Floor, Sugar Land, Texas 77478.

2.     Defendant Johnson & Johnson is a corporation organized under the laws of the State of New Jersey, with its corporate office located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

3.     Defendant DePuy Mitek is a corporation organized under the laws of the State of Massachusetts, with its corporate office located at DePuy Mitek, Inc., 325 Paramount Drive, Raynham, Massachusetts 02767.

## JURISDICTION AND VENUE

4.      This is an action for trademark infringement[1] and violations of the Texas Anti-Dilution statute.  The Court has jurisdiction over the subject matter under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331. The Court has jurisdiction over the subject matter of those claims that arise under state law based upon the principals of supplemental jurisdiction, as provided in 28 U.S.C. § 1367, as well as the provisions of 28 U.S.C. § 1338.

5.      The Court has personal jurisdiction over both Defendants, and venue is proper pursuant to 28 U.S.C. § 1391. Defendants have continuous and systematic contact with the forum as a result of their business activities conducted within the State of Texas and within this District. Further, Defendants have committed and continue to commit acts of trademark infringement and dilution, directly and/or through agents and intermediaries, by shipping, distributing, marketing, conducting business, importing, offering for sale, and/or selling certain infringing products in Texas. In the alternative, the Court has specific jurisdiction over Defendants' because their conduct arose from, or was directly related to, the causes of action.

## FACTS COMMON TO ALL COUNTS

6.      Healix is the owner of the HEALIX® trademarks as reflected by United States Federal Trademark Registration Nos. 2,258,592; 3,098,781; 3,098,782 and 3,101,469, of which Registration No. 2,258,592 is incontestable under Sections 8 & 15. The HEALIX® trademark have been used in the healthcare industry since 1989.  All of the HEALIX® trademarks are valid, subsisting, and in full force and effect.  *See* Exhibit "A".

---

[1] Although Healix has registered "servicemarks", the test is the same for trademark infringement.  Courts often refer to servicemarks as trademarks. *Grand Heritage Mgmt., LLC v. Murphy*, 2007 WL 3355380 at *1 FN 3 (S.D.N.Y. Nov. 7, 2007).

2

7.   The HEALIX® trademarks are used exclusively by Healix, a national healthcare provider of parenteral services to physicians and their respective medical practices. Through its office infusion center located within the physician's office, Healix provides registered nurses, pharmacists and pharmacy technicians to the medical practice for the administration of infusion drugs to treat neurological disorders, infectious diseases and other life-threatening ailments, as well as high-level infections that develop from various medical conditions.  Healix also offers general practice management functions, while also coordinating and overseeing investigational drug studies involving pharmaceutical companies and principal investigators.

8.   In order to maintain the goodwill created under the HEALIX® trademarks and continue its high level of visibility, Healix has maintained a national advertising and marketing campaign, spending millions of dollars each year to promote its trademark and the companies it symbolizes.  As evidence of its success, Healix is considered to be one of the largest privately-held companies operating within its particular field and is relied upon for its knowledge base in parenteral services.[2]

9.   The HEALIX® trademarks are highly distinctive, as evidenced by their federal registrations.  Moreover, Registration No. 2,258,592 is incontestable under Sections 8 & 15 and cannot be challenged unless brought under 15 U.S.C. § 1115(b), none of which apply here. The HEALIX® trademarks are also highly distinctive because of the inclusion of the letter "A" in the spelling of "Healix" which departs from "Helix", the traditional spelling of the word to describe a DNA spiral.

---

[2] Healix is referenced in the U.S. Department of Health and Human Services 2007 Report entitled "Analysis of Supply, Distribution, Demand, and Access Issues Associated with Immune Globulin Intravenous (IGIV)".

10.    Evidence that the HEALIX® trademarks are also highly distinctive is reflected by the specific spelling of the word "Healix" as opposed to the traditional spelling of "Helix", the trademarks overwhelming acceptance as the hallmark of infusion treatment and practice management within the healthcare industry and the fact that Healix's common law rights in the trademark have enjoyed over twenty years of use. Furthermore, only sixteen <u>applications</u> for trademark registration have even been filed for "Healix", the majority of which were filed by Healix. There are also no live registrations for "Healix" that belong to any other party other than Healix.[3]

11    In the fields of infectious disease, neurology and healthcare in general, the HEALIX® trademark has become synonymous with Healix and its related entities, as well as its goodwill. As a result, the HEALIX® trademarks are a highly valuable asset to Healix.

**<u>Johnson & Johnson's 1996 Application for Registration of HEALIX</u>**

12.    On September 19, 1996, Johnson & Johnson filed its application for trademark registration of "Healix" and was assigned Serial No. 75/168708.  On the application, its Goods & Services were listed as "orthopedic devices, namely, walkers".

13.    On March 31, 1997, Johnson & Johnson's application for "Healix" was suspended by the USPTO as a result of the examining attorney's recommendation.  Specifically, the USPTO attorney determined that there was a "likelihood of confusion" between the Johnson & Johnson application and two previously filed applications, Serial Nos. 74/714775 (application for registration of "Healix") and 74/714778 (application for registration of "Healix Infusion Therapy").  Both 74/14775 and 74/714778 were filed by Healix, the plaintiff in this action.

14.    On October 3, 1997, the USPTO issued a second office action in which the

---

[3] DOUBLE HEALIX® appears on the principal registry, but does not use the word "Healix" exclusively and its

examining attorney explained that while Serial No. 74/714775 was abandoned, Serial No. 74/714778 had matured into a registration.  In sum, the USPTO determined that the Johnson & Johnson application should be refused registration because of the existing HEALIX INFUSION THERAPY® trademark. The determination was premised upon the priority dates, the similarities between them and because HEALIX INFUSION THERAPY® trademark was already being used in the healthcare industry.  *See* Exhibit "B".

**Johnson & Johnson's 2007 Application for Registration of HEALIX**

15.     On October 31, 2007, Johnson & Johnson filed its second application for registration of "Healix" and was assigned Serial No. 77/317621.  On the application, its Goods & Services are listed as "suture anchors".

16.     Upon learning of the application, Healix forwarded a cease-and-desist letter to Laurence Rickles, the attorney of record for Johnson & Johnson referenced in its 2007 application and whose name appeared in the 1996 trademark application materials.  The letter specifically stated that Johnson & Johnson was infringing on the HEALIX® trademarks, similar to the manner in which it previously attempted to register the same trademark ten years earlier. Healix also attached its registration certificates and a copy of Johnson & Johnson's prior application.  The cease-and-desist letter served as notice that Healix objected to Johnson & Johnson's application and infringing use of the HEALIX® trademarks.

17.     Several weeks later, Joseph Lewis, outside counsel for Defendants, contacted Healix with respect to the cease-and-desist letter.  Mr. Lewis represented that while Johnson & Johnson's name appeared on the application, the mark was to be used by a Johnson & Johnson subsidiary, DePuy Mitek.  Over the next few months, the parties had multiple discussions

---

registration was not challenged by the plaintiff in this action.

regarding the similarities and difference between the two trademarks and how to best resolve the issue.

18.     On May 8, 2008, Healix filed its Notice of Opposition with the Trademark Trial and Appeal Board contesting Johnson & Johnson's application for registration. As such, Johnson & Johnson and DePuy Mitek were put on notice a second time that Healix objected to their application and infringing use of the HEALIX® trademarks.

**Johnson & Johnson/DePuy Mitek's Acts of Infringement**

19.     On June 3, 2008, Mr. Lewis forwarded a letter to Healix suggesting how the dispute could be resolved.  The letter contained an alternative trademark that his client was willing to substitute in place of its current application.  *See* Exhibit "C" (offered for purposes of introducing the "alternative trademark" which does not violate FRE 408).  The alternative mark was as follows:



20.     Healix informed Mr. Lewis that his client's "alternative" trademark was unacceptable because it closely resembled one of Healix's existing trademarks. Three days after receiving Mr. Lewis' initial correspondence, Healix forwarded him an email addressing the similarities between the trademarks and attached a copy of letterhead that Healix sometimes uses. Healix's letterhead contained the following trademark:



21.     Because of the font and "Healix spiral", it appeared that Johnson & Johnson/DePuy

6

Mitek had conceived its "alternative" trademark from Healix's prior registration for HEALIX INFUSION THERAPY®, which appears on the USPTO website as:



22.    After little progress had been made as to settlement, Healix proposed a concurrent use agreement on September 9, 2008 for the parties to enter into which included the abandonment of Defendants' current trademark application.  Healix made this proposal on the basis that Mr. Lewis represented that DePuy Mitek would be the only entity using the HEALIX® trademarks, not Johnson & Johnson, and that the use was limited to suture anchors.  Further, Healix's belief was also based on the application's claim that it was not being used in commence, as evidenced by its "1B" trademark application status.  Healix also sought assistance from Defendants with defending the HEALIX® trademarks in the future.

23.    Only upon receiving Mr. Lewis' response on December 10, 2008, did Healix realize that his client's use of the trademark would not be limited to DePuy Mitek.  *See* Exhibit "D" (offered for purposes of introducing into evidence that expanded use of Healix's trademark is likely to occur which does not violate FRE 408).  Rather, his letter suggested that the use of the trademark would be expanded in scope and extended beyond DePuy Mitek's use to that of Johnson & Johnson as well.  Moreover, Healix also learned on November 20, 2008 that Johnson & Johnson and DePuy Mitek were currently using its trademark in commerce on its HEALIX Peek suture anchors and that they had developed two additional products, HEALIX BR and HEALIX TI, which further infringed upon the HEALIX® trademarks.

24.    Considering the new information it learned upon receiving Mr. Lewis' December 10, 2008 correspondence, Healix put Johnson & Johnson/DePuy Mitek on notice a third time that

7

they were infringing upon its registered trademarks and to cease all further use. Healix explained that their failure to do so would cause confusion between the trademarks and would lead to dilution by blurring as set forth under the Texas Anti-Dilution statute.  Defendants have acted in bad faith by continuing use of a registered trademark in light of the owners' rights, after having received notice of their unlawful actions.

25.     Upon failing to receive an acceptable answer from either Johnson & Johnson or DePuy Mitek as to its willingness to refrain from further use of its registered trademarks, it filed suit and served the opposing parties with copies of this Complaint.

## COUNT ONE

### INFRINGEMENT OF FEDERALLY-REGISTERED TRADEMARKS PURSUANT TO 15 U.S.C. §1114

26.     Healix hereby re-alleges and incorporates by reference the allegations set forth in the aforementioned paragraphs, as though fully set forth herein.

27.     Based on its registered trademarks, Healix asserts that Defendants' actions violate 15 U.S.C. § 1114 because their infringing use of the HEALIX® trademarks are in connection with the sale, offering for sale, distribution, and advertising of its "Healix" products, namely HEALIX Peek, HEALIX BR and HEALIX TI, all of which are used in the healthcare industry.

28.     Defendants' acts complained of above constitute infringement of Healix's rights in the HEALIX® trademarks under 15 U.S.C. § 1114. Defendants' application for the proposed "Healix" trademark registration and the one used in commerce is identical to Healix's registered trademarks and is likely to cause confusion. Further, Defendants' proposed "alternative" trademark is "confusingly similar" to Healix's registered trademarks and was arguable taken from its prior specimen submitted to the USPTO and accessible on the USPTO's website at http://tess2.uspto.gov/bin/showfield?f=doc&state=p1i4i0.2.15. When considering the USPTO's

8

previous determination, the similarities in appearance between the parties' trademarks, the marketing channels used, the overlap in customer base, the evidence of actual confusion and the fact that both parties operate within the healthcare industry, Defendants' "Healix" is "confusingly similar" and infringes upon the HEALIX® trademarks.

29.     Defendants were provided with ample notice of Healix's rights in the HEALIX® trademarks, including its incontestable rights under sections 8 & 15. Despite receiving said notices, Defendants did not refrain from further use of Healix's registered trademarks.  Rather, they not only continued infringing upon them, but threatened to expand their use.   The conduct of Defendants has been and continues to be intentional, willful and in bad faith which, in turn, entitles Healix to damages.

30.     Healix has no adequate remedy at law for the foregoing wrongful conduct. Healix has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## COUNT TWO

**VIOLATION OF THE TEXAS ANTI-DILUTION STATUTE PURSUANT
TO SECTION 16.29 OF THE TEXAS BUSINESS AND COMMERCE CODE**

31.     Healix hereby re-alleges and incorporates by reference the allegations set forth in the aforementioned paragraphs, as though fully set forth herein.

32.     Section 16.29 of the Texas Business and Commerce Code provides for protection against acts which are "likely to injure a business reputation or dilute the distinctive quality of a mark ... regardless of whether there is competition between the parties or confusion as to the source of goods or services."

33.     Defendants' use, advertisement, marketing, sale and promotion of the HEALIX® trademarks, as alleged above, constitute dilution and creates a loss of their highly distinctive

nature when considering the trademarks are federally registered, their departure from the traditional spelling of "Helix", the recognition they receive in the healthcare industry, the trademarks long-standing use of over twenty years and the infrequency in which third party's have attempted to register "Healix" as a trademark.

34.    Healix has no adequate remedy at law for the foregoing wrongful conduct. Healix has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions. Further, Healix is entitled to an injunction under the Texas Anti-Dilution statute on the basis that Defendants' conduct is likely to dilute the distinctive quality of Healix's registered trademarks via "blurring".

### JURY DEMAND

35.    Healix demands a jury trial on all issues to be tried in this matter.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs Healix, Inc. and Healix Infusion Therapy, Inc., respectfully pray that Defendants Johnson & Johnson and DePuy Mitek be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants for damages, together with interest as allowed by law, costs of court, attorney's fees, permanent injunctive relief, and such other and further relief to which Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

By: _____
Scott Weiss, Attorney-in-Charge
Federal Bar No.: 38224.
14140 Southwest Freeway, Ste. 400
Sugar Land, Texas 77478
281-295-4122
832-201-0687 (Fax)

**ATTORNEY FOR PLAINTIFFS
HEALIX, INC. AND HEALIX
INFUSION THERAPY, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been forwarded via electronic filing to Joseph Lewis with service of process to issue within 120 days of this filing.

_____
Scott Weiss

11

# EXHIBIT "A"

Int. Cls.: 35 and 42

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,258,592

United States Patent and Trademark Office

Registered July 6, 1999

## SERVICE MARK
### PRINCIPAL REGISTER

## HEALIX

HEALIX INFUSION THERAPY, INC. (TEXAS CORPORATION)
6001 SAVOY, SUITE 400
HOUSTON, TX 77036

FOR: MEDICAL MANAGEMENT OF PHYSICIAN PRACTICES, NAMELY, MEDICAL COST MANAGEMENT OF PHYSICIAN PRACTICES; BUSINESS MANAGEMENT OF PHYSICIAN PRACTICES; COST MANAGEMENT FOR THE HEALTH BENEFIT PLANS OF OTHERS IN PHYSICIAN PRACTICES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 7–1–1989; IN COMMERCE 10–6–1989.

FOR: HEALTH CARE SERVICES, NAMELY, MAINTAINING FILES AND RECORDS CONCERNING THE MEDICAL CONDITION OF INDIVIDUALS OF PHYSICIAN PRACTICES AND MANAGED HEALTH CARE SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 7–1–1989; IN COMMERCE 10–6–1989.

OWNER OF U.S. REG. NO. 1,982,687.

SER. NO. 75–333,697, FILED 7–31–1997.

JODI LAUTERBACH, EXAMINING ATTORNEY

Int. Cls.: 35, 41, and 44

Prior U.S. Cls.: 100, 101, 102, and 107

**United States Patent and Trademark Office**

Reg. No. 3,098,781
Registered May 30, 2006

# SERVICE MARK
## PRINCIPAL REGISTER

# HEALIX

HEALIX INFUSION THERAPY, INC. (TEXAS CORPORATION)
14140 SOUTHWEST FREEWAY, 4TH FLOOR
SUGAR LAND, TX 77478

FOR: RETAIL PHARMACY SERVICES, INVENTORY MANAGEMENT SERVICES IN THE FIELD OF PHARMACY, AND EMPLOYMENT, RECRUITING, AND PLACEMENT SERVICES IN THE MEDICAL PROFESSION, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 12-1-1994; IN COMMERCE 12-1-1994.

FOR: EDUCATIONAL SERVICES, NAMELY, PROVIDING CLASSES IN THE FIELD OF MEDICINE, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 3-1-2003; IN COMMERCE 3-1-1993.

FOR: PROVIDING MEDICAL INFORMATION VIA THE INTERNET, AND NURSING CARE SERVICES, IN CLASS 44 (U.S. CLS. 100 AND 101).

FIRST USE 7-15-2001; IN COMMERCE 7-15-2001.

OWNER OF U.S. REG. NO. 2,258,592.

SN 78-231,318, FILED 3-28-2003.

GIANCARLO CASTRO, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101, and 102

United States Patent and Trademark Office

Reg. No. 3,098,782
Registered May 30, 2006

## SERVICE MARK
### PRINCIPAL REGISTER

# HEALIX

HEALIX INFUSION THERAPY, INC. (TEXAS CORPORATION)
14140 SOUTHWEST FREEWAY, 4TH FLOOR
SUGAR LAND, TX 77478

FOR: ADMINISTERING PHARMACY REIMBURSEMENT PROGRAMS AND SERVICES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 12-1-1994; IN COMMERCE 12-1-1994.

OWNER OF U.S. REG. NOS. 1,982,687 AND 2,258,592.

SN 78-231,329, FILED 3-28-2003.

GIANCARLO CASTRO, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101, and 102

United States Patent and Trademark Office

Reg. No. 3,101,469
Registered June 6, 2006

## SERVICE MARK
### PRINCIPAL REGISTER

## HEALIX

HEALIX INFUSION THERAPY, INC. (TEXAS CORPORATION)
14140 SOUTHWEST FREEWAY, 4TH FLOOR
SUGAR LAND, TX 77478

    FOR: EXPORT OF MEDICAL GOODS, INCLUD-ING DRUGS, SUPPLIES, AND DURABLE MEDICAL EQUIPMENT, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 7-7-1989; IN COMMERCE 7-7-1989.

OWNER OF U.S. REG. NO. 2,258,592.

SN 78-232,622, FILED 4-1-2003.

DAVID HOFFMAN, EXAMINING ATTORNEY

# EXHIBIT "B"

75168708



*Johnson & Johnson*

September 16, 1996

Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA  22202-3513

> Re:  Intent-to-use
>      Application For
>      Trademark Registration
>
>       Mark:  **HEALIX**
>      Class:  **10**
>  Applicant:  **Johnson & Johnson**

Dear Sir:

Enclosed  please  find  the  Application  for  Registration  of  the
above-referenced trademark.  The fee of $245.00, or such amount as may
be required, is to be charged to our Account Number 10-0750.

> Very truly yours,
>
> *Maria C. Kirczow*
> (Maria C. Kirczow) for
> for **Laurence S. Rickles**

Enclosure

Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933-7001
(908) 524-**2281**

## UNITED STATES DEPARTMENT OF COMMERCE
### Patent and Trademark Office

| | PAPER NO. |
|---|---|
| **SERIAL NO.** 75/168708   **APPLICANT** JOHNSON & JOHNSON | |
| **MARK** HEALIX | **ADDRESS:** |
| | **Assistant Commissioner for Trademarks** |
| **ADDRESS** MARIA C KIRCZOW JOHNSON & JOHNSON ONE JOHNSON & JOHNSON PLAZA NEW BRUNSWICK NJ 08933-7001 | **2900 Crystal Drive** **Arlington, VA 22202-3513** |

| **ACTION NO.** 01 | If no fees are enclosed, the address should include the words "Box Responses - No Fee." |
| **MAILING DATE** 03/31/97 | Please provide in all correspondence: |
| **REF. NO.** | 1. Filing Date, serial number, mark and Applicant's name. 2. Mailing date of this Office action. 3. Examining Attorney's name and Law Office number. 4. Your telephone number and ZIP code. |

**FORM PTO-1525 (5-90)**      **U.S. DEPT. OF COMM. PAT. & TM OFFICE**

## FIRST OFFICE ACTION

RE: Serial Number: 75/168708

The assigned examining attorney has reviewed the referenced application and determined the following.

### Prior Pending Application

Although the examining attorney has searched the Office records and has found no similar *registered* mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), the examining attorney encloses information regarding pending Application Serial Nos. 74-714775 and 74-714778. 37 C.F.R. Section 2.83.

There may be a likelihood of confusion between the applicant's mark and the marks in the above noted applications under Section 2(d) of the Act. The filing dates of the referenced applications precede the applicant's filing date. If the earlier-filed applications mature into a registration, the examining attorney may refuse registration under Section 2(d).

Pending the disposition of Application Serial Nos. 74-714775 and 74-714778., action on this application is SUSPENDED.

Jodi D. Lauterbach
Trademark Attorney
Law Office 107
(703) 308-9107 ext. 293

## UNITED STATES DEPARTMENT OF COMMERCE
### Patent and Trademark Office

| | |
|---|---|
| **RIAL NO.**         **APPLICANT**<br>5/168708 JOHNSON & JOHNSON<br><br>**RK**<br><br>**EALIX**<br>**DRESS**<br>ARIA C KIRCZOW<br>JHNSON & JOHNSON<br>NE JOHNSON & JOHNSON PLAZA<br>EW BRUNSWICK NJ   08933-7001<br><br>**IM PTO-1525 (5-90)**      **U.S. DEPT. OF COMM. PAT. & TM OFFICE** | **PAPER NO.**<br><br>**ADDRESS:**<br>**Assistant Commissioner**<br>**for Trademarks**<br>**2900 Crystal Drive**<br>**Arlington, VA 22202-3513**<br><br>*If no fees are enclosed, the address should include the words "Box Responses - No Fee."*<br>Please provide in all correspondence:<br>1. Filing Date, serial number, mark and Applicant's name.<br>2. Mailing date of this Office action.<br>3. Examining Attorney's name and Law Office number.<br>4. Your telephone number and ZIP code. |

In the middle column:

**ACTION NO.**
02

**MAILING DATE**
10/03/97

**REF. NO.**

---

**A PROPER RESPONSE TO THIS OFFICE ACTION MUST BE RECEIVED WITHIN 6 MONTHS FROM THE DATE OF THIS ACTION IN ORDER TO AVOID** *ABANDONMENT.* *For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the* <u>*Trademark Law Office No.*</u>*,* <u>*Serial No.*</u>*, and* <u>*Mark*</u> *in the upper right corner of your response.*

### SECOND OFFICE ACTION

RE: Serial Number: 75/168708

On March 31, 1997, action on this application was suspended pending the disposition of Application Serial Nos. 74-714775 and 74-714778. The Application Serial No. 74-714778 has abandoned and the Application Serial No. 74-714775 has matured into a registration. Therefore, registration of the applicant's proposed mark is refused as follows.

<u>**Likelihood of Confusion**</u>

The examining attorney refuses registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), because the applicant's mark, when used on or in connection with the identified goods, so resembles the mark in U.S. Registration No. 1982687 as to be likely to cause confusion, or to cause mistake, or to deceive. TMEP section 1207. See the enclosed registration.

The examining attorney must analyze each case in two steps to determine whether there is a likelihood of confusion. First, the examining attorney must look at the marks themselves for similarities in appearance, sound, connotation and commercial impression. *In re E. I. DuPont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). Second, the examining attorney must compare the goods or services to determine if they are related or if the activities surrounding their marketing are such that confusion as to origin is likely. *In re August Storck KG,* 218 USPQ 823 (TTAB 1983); *In re International Telephone and Telegraph Corp.,* 197 USPQ 910 (TTAB 1978); *Guardian Products Co., v. Scott Paper Co.,* 200 USPQ 738 (TTAB 1978).

The examining attorney must look at the marks in their entireties under Section 2(d). Nevertheless, one feature of a mark may be recognized as more significant in creating a commercial impression. Greater weight is given to that dominant feature in determining whether there is a likelihood of confusion. *In re National Data Corp.*, 224 USPQ 749 (Fed. Cir. 1985); *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (CCPA 1976). *In re J.M. Originals Inc.*, 6 USPQ2d 1393 (TTAB 1988).

Here, the registrant's mark is ***HEALIX INFUSION THERAPY, INC.*** and design and the applicant is seeking to register the mark ***HEALIX***.  The dominant feature of the registrant's mark is the term HEALIX.  The wording INFUSION THERAPY, INC. is less significant in creating the overall commercial impression because it is descriptive of the services.  While the examining attorney cannot ignore a disclaimed portion of a mark and must view marks in their entireties, one feature of a mark may be more significant in creating a commercial impression. *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (CCPA 1976); *In re El Torito Restaurants Inc.*, 9 USPQ2d 2002 (TTAB 1988); *In re Equitable Bancorporation,* 229 USPQ 709 (TTAB 1986).  Disclaimed matter, i.e. descriptive matter, is typically less significant or less dominant because it is not viewed as a source indicator given its descriptiveness.  The design feature of the healix is also less significant in creating the overall commercial impression of the registrant's mark.  It is well established that when a mark consists of a word portion and a design portion, the word portion is more likely to be impressed upon a purchaser's memory and to be used in calling for the goods or services. *In re Appetito Provisions Co.*, 3 USPQ2d 1553 (TTAB 1987); *Amoco Oil Co. v. Amerco, Inc.*, 192 USPQ 729 (TTAB 1976).  Therefore, the marks are confusingly similar in that the applicant has merely appropriated the dominant portion of the registrant's mark.  The significance is that the dominant portion of the registrant's mark, i.e. the term HEALIX, is more likely to be viewed as the symbol of origin, and  as such, the applicant's use of a similar mark on similar goods and services will likely create customer confusion.

In addition to the marks being confusingly similar, the registrant's services and the applicant's goods are highly related.   The registrant's services are "health care services, namely, physical and occupational therapy; nursing services; pharmacy services; rental and retail outlet services of durable medical equipment" and the applicant's goods are "durable medical equipment, namely, walkers." The applicant's goods are related to the registrant's services in that they are the type of goods and services that originate from the same source as evidenced by the third party registrations enclosed. See attachments.  Thus, given that the marks are confusingly similar and that the goods and services are highly related, there exists a likelihood of confusion.

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

75/168708                                    -3-

If the applicant has any questions or needs assistance in responding to this Office action, please telephone the assigned examining attorney.


Jodi D. Lauterbach
Trademark Attorney
Law Office 107
(703) 308-9107 ext. 293

# EXHIBIT "C"

# BARNES & THORNBURG LLP

http://www.btlaw.com

750 17th Street N.W.
Suite 900
Washington, DC 20006-4607

| | |
|---|---|
| Switchboard: | (202) 289-1313 |
| Fax: | (202) 289-1330 |
| Direct Dial: | (202) 408-6912 |
| E-mail: | joe.lewis@btlaw.com |

Joseph D. Lewis

June 3, 2008

VIA E-MAIL <SWEISS@HEALIX.NET> AND FIRST-CLASS MAIL

WITHOUT PREJUDICE – FOR SETTLMENT PURPOSES ONLY

Mr. Scott Weiss
Corporate Counsel/Director of Compliance
Healix Infusion Therapy, Inc.
4th Floor
14140 Southwest Freeway
Sugar Land, TX  77478

   Re:  HEALIX trademark

Dear Mr. Weiss:

   This is further to our previous correspondence and the Notice of Opposition that has been filed by your company.  We have investigated this matter and now are able to provide you with this letter, which includes additional information about our client's product and trademark, and which should be of assistance to you in evaluating this matter.  Before outlining the details of our response, we provide a brief overview of our understanding of the pertinent facts.

   Your company is relying upon four service mark registrations for the mark "HEALIX". They are:  (1) U.S. Service Mark Registration No. 2,258,592 (registered on July 6, 1999) for health care services, namely maintaining files and records concerning the medical condition of individuals of physician practices and managed health care services, (2) U.S. Service Mark Registration No. 3,098,781 (registered on May 30, 2006) for providing medical information via the internet and nursing care services, (3) U.S. Service Mark Registration No. 3,098,782 (registered on May 30, 2006) for administering pharmacy reimbursement programs and services, and (4) U.S. Service Mark Registration No. 3,101,469 (registered on June 6, 2006) for export of medical goods, including drugs, supplies and medical equipment.

   We understand that Healix Infusion Therapy ("HIT") provides services which relate to drug infusion therapy.  The company web site indicates that HIT's business is the "delivery of parenteral services to medical practices", and that HIT is an "office infusion center management company providing services for physician practices."  We have not seen any evidence that HIT uses HEALIX as a trademark for any branded medical apparatus, but you have provided us with examples of various promotional items bearing HEALIX which have been used to promote HEALIX services.

Scott Weiss
June 3, 2008
Page 2 of 4

HIT operates the web sites "healix.net" and "healixhealth.org". The domains "healix.com" and "healixhealth.com" are owned and used by another provider of healthcare services.

Our client, DePuy Mitek, a Johnson & Johnson company ("J&J") seeks to register the trademark "HEALIX" for very specific surgical products, namely, suture anchors which are used for fastening tissue in orthopaedic repair and reconstruction procedures (such as rotator cuff repair). The anchors will be sold under the DePuy Mitek name, and HEALIX will be a secondary identifier. The fasteners incorporate a dual thread pattern that resists pull-out of the fastener from tissue. The dual thread design is evocative of a helix shape. When used on our client's suture anchors, the trademark, which combines the words "heal" and "helix," connotes the product's use in healing tissue and its dual-thread design.

Our client has developed a distinctive logo which it intends to use in promoting the product. The logo leaves no doubt as to the nature of the product, as it includes the phrase "dual threaded suture anchor." In the logo, the letter "X" forms part of a helix shape as shown below:



Our client's product is not for sale to the general public and would not be used in an office setting of a general medical practice. The product would be used by specialized orthopaedic surgeons, and only for particular surgical procedures.

Based on the above facts, we do not believe that our client's use or registration of "HEALIX" would conflict with any rights that Healix Infusion Therapy, Inc. may have. Three factors strongly support our conclusion that our client's trademark would not create any likelihood of confusion: (1) the considerable difference between the goods to which our client's mark is applied as compared to the services that HIT provides, (2) the marked difference between the channels of trade in which our client's goods are provided and the channels of trade in which your company's services are offered, and (3) the degree of care exercised by the customers of both our client and HIT.

With respect to the first point, HIT offers services of administering and managing drug infusion therapy. You have not identified for us any medical devices sold as HEALIX brand products, much less any surgical implants in the nature of suture anchors. Accordingly, a

Scott Weiss
June 3, 2008
Page 3 of 4

significant distinction between the uses of the mark lies in the fact that HIT offers services while J&J is offering a specific type of medical device. In addition, the procedure of drug infusion therapy is far afield from orthopaedic repair and reconstruction.

With respect to the second point, HIT markets and sells its services to medical practices that have patients needing drug infusion therapy. In contrast, our client markets its suture anchors to surgeons engaged in orthopaedic repair and reconstruction. As such, the channel of trade through which our client's products flow differs considerably from the channel of trade utilized for HIT's services. Suture anchors and infusion therapy services are not likely to cross paths and be encountered by the same medical professionals.

With respect to the third point, the degree of care exercised by physicians, surgeons, and medical institutions is such that it is extraordinarily unlikely, if not impossible, for any physician, surgeon or medical institution to confuse the source of services for drug infusion therapy with the source of surgical fasteners used for orthopaedic reconstruction and repair. This is especially the case since our client's products are marketed as products of DePuy Mitek – a company that maintains a close and ongoing relationship with orthopaedic surgeons; and the services of HIT are provided as a comprehensive program in which HIT is deeply integrated into its clients' medical practices. The familiarly that these customers have with the sellers of the respective goods and services at issue will preclude any confusion.

Your letter to J&J asserted that both HIT and J&J both conduct business within the same "healthcare industry." While this may be true, the "healthcare industry" is not a homogeneous whole, but is composed of many different segments which constitute different markets. See, Astra Pharmaceutical Products v. Beckman Instruments, 718 F.2d 1201 (1st Cir. 1983). The Astra case is highly relevant, since the plaintiff was asserting rights in both a trademark and its company name. Even though both parties were using the identical trademark ASTRA, and were selling to hospitals, no likelihood of confusion was found. As exists in the present situation, the Court relied on the fact that the goods traveled in different channels of trade within the healthcare industry, the goods were not similar, purchasers were sophisticated professionals, and the defendant's products also were labeled with its company name.

The Federal Trademark Register is replete with examples of the identical mark being used for different, non-competitive medical products. This is to be expected when a trademark evokes characteristics of the product sold under the mark, as is the case here.

In this regard, we note that your company recently was unsuccessful in its opposition against the registration of "HELIX" by Cerner Corporation (Decision in Opposition No. 91170997 dated January 10, 2008). Further, the Examining Attorney assigned to our client's application concluded that our client's trademark is not likely to cause confusion with any of HIT's registered marks. This also supports our client's belief that a likelihood of confusion in this instance is unlikely.

Scott Weiss
June 3, 2008
Page 4 of 4

In summary, our client strongly believes that its use and registration of "HEALIX" will not engender any confusion in the real-world marketplace for our client's products or HIT's services.  With the additional information that we have provided above, we hope that you also will conclude that confusion is not likely and will withdraw the opposition.

Notwithstanding our conclusion, we certainly do not wish to imply that further dialogue on this issue is precluded.  To the contrary, while our client believes that there is little, if any, possibility of confusion with HIT's registered trademark, we welcome further dialogue on this issue.  Indeed, so as to alleviate any concern on the part of your company, our client would consider entering into a written agreement regarding its use of HEALIX.  For example, our client could agree not to use the HEALIX mark in areas that include or are related to infusion therapy, or as a trade name for any company providing medical services.

We look forward to discussing this matter with you in greater detail with the hope of reaching a final and amicable resolution.

Very truly yours,

BARNES & THORNBURG LLP

Joseph D. Lewis

JDL/chb

cc:

DCDS01;117866

# EXHIBIT "D"

# BARNES & THORNBURG LLP

http://www.btlaw.com

Suite 900
750 17th Street N.W.
Washington, DC 20006-4607 U.S.A.
(202) 289-1313
Fax (202) 289-1330

Joseph D. Lewis
Direct Dial: (202) 408-6912
E-mail: joe.lewis@btlaw.com

December 10, 2008

***WITHOUT PREJDUICE – FOR SETTLEMENT PURPOSES ONLY***

Houston, TX  77010

       Re:   Healix Infusion Therapy, Inc. v. Johnson & Johnson
            Opposition No. 91183985; Mark:  HEALIX
            Our Ref.:    8629-46342

Dear Mr.   :

      This is further to my recent discussions with you and previous discussions with Scott Weiss regarding settlement of this matter.  DePuy Mitek and Johnson & Johnson ("J&J") remain desirous of entering into a concurrent use or co-existence agreement with your client.  However, the draft that presently is on the table presents some issues that makes it problematic for our client to accept it in its present form.

      The agreement refers to your client's ownership of the mark "CORIS".  We do not question that that your client owns the registration, but do question why this trademark is mentioned in the agreement, which otherwise pertains only to HEALIX.  Mr. Weiss previously raised issues with respect to J&J's use of CORUS as part of certain email addresses.  However, as we explained to him, J&J's use of CORUS long predates use of CORIS by Healix Infusion Therapy, Inc. ("HIT").

      On the other hand, if your client is seeking express consent from J&J to insure that claims are not made against your client's usage of CORIS, then we can work that into the agreement.  Indeed, a mutual co-existence agreement involving multiple marks might look better on the record for your client, as there is additional consideration given for this agreement, for which there would be no parallel in enforcement efforts against others.  However, I want to be clear that our client has not asserted against HIT any claim with respect to use of CORIS, and, in our view, it is not necessary to mention CORIS in this agreement.

      Section 2.1 of the agreement would limit use of HEALIX by our client to only suture anchors.  While suture anchors are the only goods on which the mark is being used, the proposed

Chicago       Indiana       Michigan       Washington, D.C.

*WITHOUT PREJDUICE – FOR SETTLEMENT PURPOSES ONLY*

December 10, 2008
Page 2 of 3

language too restrictive.  As you may know, J&J is diverse conglomerate of autonomous companies in the medical field.  It's perhaps the most diverse of companies in the medical field encompassing a range of products that more typically could be sold by two unrelated companies; sometimes under the same trademarks.  In view of this, our client cannot now agree that there could never be other products on which the trademark HEALIX might be used.  On the other hand, we recognize that HIT is entitled to a sufficient scope of exclusive rights to protect the company's goodwill, and cannot agree to a settlement that would allow incursions which might be damaging to this business interest.

Thus, our client is not seeking consent to any use of HEALIX that is beyond what is needed to resolve the present controversy.  Accordingly, the agreement need only provide consent by HIT to use of HEALIX by our client in connection with suture anchors and directly-related goods.  To protect your client's future interests, the agreement can provide an express right for HIT to challenge any other use of HEALIX by our client that might occur in the future.  Our client would agree to refrain from all use HEALIX in connection with infusion therapy services, products for use in infusion therapy, or pharmaceuticals that could be administered through infusion therapy.

Your client is asking that J&J abandon its pending application.  At the same time, your client has urged J&J to enforce its own trademark rights against third parties who have made some use of HEALIX.  These enforcement efforts would be made more difficult in the absence of a registration.  We understand your client's concern about third parties who might use HEALIX to the detriment of both of our clients, and its desire to keep the Federal Register as clear as possible of conflicting trademarks.  To assist with this objective, we suggest that if the opposed application is abandoned, that our client register a different mark which incorporates additional elements, such as additional words, or a design like the logo below:



Lastly, your client seeks cooperation on future challenges to the use of HEALIX by third parties.  J&J can agree to cooperate, but we believe that the cooperation commitment should be mutual, in the event that either party has issues in the future requiring such cooperation.  Also, it would be helpful if the agreement specified in greater detail the type of cooperation that is expected.  For example, our client would be happy to provide information concerning its

*WITHOUT PREJDUICE – FOR SETTLEMENT PURPOSES ONLY*

Tom Adolph, Esq.
December 10, 2008
Page 3 of 3

products, its uses and marketing channels.  Our client would not be interested in becoming a party to litigation merely in the name of "cooperation," in the absence of its own independent, conclusion that its legal rights were threatened.

    We are hopeful that above concepts can be worked into a revised draft which can be used to settle this matter.  We would be happy to consider such a draft, or prepare one for your consideration, after receiving your further comments.

                              Very truly yours,

                              BARNES & THORNBURG LLP

                              Joseph D. Lewis

JDL/chb

DCDS01 JYL 128023v1